**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Martin King, | No. CV-19-05669-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") determination that Plaintiff is no longer disabled under Titles II and XVI of the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 17, "Pl. Br."), the Commissioner's Response (Doc. 20, "Def. Br."), Plaintiff's Reply (Doc. 26, "Reply"), and the Administrative Record (Doc. 11, "R."). For the following reasons, the decision is affirmed.

**I.   BACKGROUND**

Plaintiff, born January 24, 1986, was found disabled as of January 1, 2004 due to migraine headaches, depression, and anxiety in a prior decision by the Commissioner dated June 29, 2006 (hereafter, the "comparison point decision" or "CPD").[1]  (R. at 14–15, 24.) However, following a hearing on August 10, 2016, a Disability Hearing Officer determined

---

[1] The Court has thoroughly reviewed the complete record, including all of the medical evidence. In lieu of providing a detailed summary of it here, the Court will reference particular evidence as appropriate in its analysis.

that Plaintiff was no longer disabled as of June 1, 2015 (hereafter, the "date of improvement" or "DOI"). (*Id.* at 14, 81–107.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on September 12, 2018. (*Id.* 14, 38–60 [hearing transcript].) On October 30, 2018, the ALJ issued a written decision likewise finding that Plaintiff was no longer disabled as of the DOI. (*Id.* at 14–26.) Although the ALJ found that Plaintiff still had the same impairments as he did at the time of the CPD (with the addition of lumbar degenerative disc disease),[2] the ALJ found that medical improvement occurred on the DOI as evident by a decrease in the severity of Plaintiff's impairments. (*Id.* at 15, 18.) The ALJ found that as of the DOI Plaintiff had the residual functional capacity ("RFC")[3] to perform "medium work"[4] with frequent stooping; no climbing of ladders, ropes, or scaffolds; occasional exposure to excessive loud noise and vibration, pulmonary irritants, poorly ventilated areas, dangerous machinery, and unprotected heights; and no driving. (*Id.* 19–20.) He was limited to low-stress work with no fast-paced production rate requirements. (*Id.* at 20.) Based on this RFC assessment; Plaintiff's age, education, and work experience; and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform work as a janitorial worker, housekeeper, and dishwasher and was therefore not disabled. (*Id.* at 24–25.) Afterward, the Appeals Council denied review and the ALJ's decision became final. (*Id.* at 1–3.)

## II. LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court only reviews issues raised by the party challenging the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998)

---

[2]   Though the ALJ found multiple medically determinable impairments, Plaintiff limits the focus of this appeal to his migraine headaches. (Pl. Br. at 3.)

[3]   "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

[4]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may affirm, modify, or reverse the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Even when the ALJ commits legal error, [the Court] uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant continues to be disabled under the Act, the ALJ engages in an eight-step evaluation for a claim of disability under Title II, *see* 20 C.F.R. §§ 404.1594(f)(1)–(8), and a seven-step evaluation for a claim of disability under Title XVI, *see* 20 C.F.R. §§ 416.994(b)(5)(i)–(vii). At step 1 of the Title II evaluation, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to

step 2 (step 1 for the Title XVI evaluation).[5] *Id.* § 404.1594(f)(2). At step 2, the ALJ determines if the claimant has an impairment or combination of impairment which meets or equals the severity of an impairment listed in Appendix 1 to 20 C.F.R. § 404, subpart P. *Id.* If so, the claimant is still disabled. *Id.* If not, the ALJ proceeds to step 3. *Id.* § 404.1594(f)(3). At step 3, the ALJ determines if there has been medical improvement as shown by a decrease in medical severity. *Id.* If so, the ALJ proceeds to step 4. *Id.* If not, the ALJ skips to step 5. *Id.* At step 4, the ALJ determines if the medical improvement is related to the claimant's ability to do work, *i.e.*, if there has been an increase in the claimant's RFC. *Id.* § 404.1594(f)(4) If so, the ALJ skips to step 6. *Id.* If not, the ALJ proceeds to step 5. *Id.* At step 5, the ALJ determines whether any exceptions in 20 C.F.R. §§ 404.1594(d), (e) apply. *Id.* § 404.1594(f)(5). If none apply, the claimant is still disabled. *Id.* If an exception in 20 C.F.R. § 404.1594(e) applies, the claimant is no longer disabled. *Id.* If an exception in 20 C.F.R. § 404.1594(d) applies, the ALJ proceeds to step 6. *Id.* At step 6, the ALJ determines whether all of the claimant's current impairments in combination are severe. *Id.* § 1594(f)(6). If not, the claimant is no longer disabled. *Id.* If so, the ALJ proceeds to step 7. *Id.* At step 7, the ALJ assesses the claimant's RFC and determines whether the claimant can perform past work. *Id.* § 404.1594(f)(7). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to step 8. *Id.* § 404.1594(f)(8). At step 8, the ALJ determines whether the claimant can perform any other work give the claimant's RFC, age, education, and past work experience. *Id.* If so, the claimant is no longer disabled. *Id.* If not, the claimant is still disabled. *Id.*

**III. ANALYSIS**

    **A. Plaintiff's Subjective Allegations Were Properly Discounted.**

Plaintiff's first assignment of error is that the ALJ improperly rejected his symptom testimony. (Pl. Br. at 12–20; *see* R. at 20–23.) In assessing a claimant's RFC, the ALJ

---

[5] This case involves claims under both Title II and Title XVI. (R. at 14.) However, because steps 2 through 7 of the eight-step Title II evaluation are substantively identical to the seven-step Title XVI evaluation, the Court will only expressly reference the Title II evaluation for brevity.

- 4 -

considers a claimant's subjective allegations and first "determine[s] the extent to which [any] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the] symptoms affect [the claimant's] ability to work." 20 C.F.R. § 404.1529(a); *see* 20 C.F.R. § 404.1529(c)(2).  Absent a finding of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting a claimant's allegations.  *Treichler*, 775 F.3d at 1102.  General findings are not sufficient.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.*  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099.

      The ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded by regulation on other grounds*; *see Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming rejection of a claimant's testimony where claimant's reported activities "suggest[ed] that [his] later claims about the severity of his limitations were exaggerated").  The ALJ may also consider "whether the claimant takes medication or undergoes other treatment for the symptoms," *Lingenfelter*, 504 F.3d at 1040, as well as any "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  And finally, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence."[6] *Lingenfelter*, 504 F.3d at 1040.  "[T]he ALJ is the final arbiter

---

[6] "[H]owever, an ALJ cannot reject a claimant's subjective pain or symptom

with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041.

Here, the ALJ noted that Plaintiff testified he is unable to work due to headaches occurring 15 to 25 days per month accompanied by nausea; sensitivity to light, noise, and stress; and memory problems. (R. at 20, 42–45.) Plaintiff further testified that his headaches are worsened with any activity but are diminished with medication and exercise. (*Id.* at 20, 43–45, 55.) The ALJ discounted these allegations on account that they were not entirely consistent with the medical and other evidence of record. (*Id.* at 20–23.) As explained below, the ALJ's reasons for discounting Plaintiff's allegations were specific, clear, convincing, and supported by substantial evidence.

The ALJ found that "the treatment history and evidence as a whole suggests his medical condition is no longer debilitating." (*Id.* at 21.) In particular, the ALJ noted that Plaintiff was "essentially headache free for a month while camping" and "reported no more than a mild headache on a recent three day backpacking trip." (*Id.* at 22, 525, 565.) The ALJ further found Plaintiff's previous work in landscaping and demolition for a year and a half–which he quit due to pay issues–"inconsistent with the degree of sensitivity to noise and functional limitation alleged." (*Id.* at 22, 486.) Additionally, the ALJ noted that Plaintiff's neurologists repeatedly encouraged him to decrease his use of opioids as they believed Plaintiff's headaches were caused by overusing them. (*Id.* at 22, 568 ["Decrease the use of Percocet as it can worsen headache if overused," February 2016]; *see id.* at 800 [noting that Plaintiff was taking his medication once every 4 hours instead of twice a day as prescribed, April 2016], 817, 856.) As further noted, Plaintiff became "agitated" during a discussion about his use of medical marijuana and opioids with a provider at his new pain clinic.[7] (*Id.* at 22 (citing *id.* at 831).) The provider informed him that he would have to

---

testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter*, 504 F.3d at 1040 n.11.

[7]  Plaintiff established care with a new pain clinic because his previous one was no longer contracted with his insurer. (R. at 915, 830.)

- 6 -

choose between THC and opioids as the use of THC was against clinic policy. (*Id.* at 831.) The provider further informed him that opioids are not typically indicated for migraines, which he was not "happy" with. (*Id.* at 832.)

The Court finds no error. Plaintiff's engagement in the activities noted by the ALJ are incongruent with his allegations and were therefore a valid basis to discount his allegations of totally debilitating headaches.[8] *See Molina*, 674 F.3d at 1113; *Valentine*, 574 F.3d at 694. To wit, the fact that it was possible for Plaintiff to be "essentially headache free" for an entire month casts doubt on his allegations of disabling migraine headaches occurring almost daily. Likewise, the fact that Plaintiff engaged in demolition work and landscaping *for over a year and a half* casts doubt on his allegations of disabling migraine headaches and sensitivity to light and sound. Furthermore, Plaintiff's failure to use his medication as prescribed was another valid basis for discounting his allegations of a disabling condition. *Tommasetti*, 533 F.3d at 1039. Because the Court finds at least two valid reasons for the discount of Plaintiff's allegations, it need not determine the validity of the ALJ's remaining reasons, *e.g.*, providers' observations of only "mild" distress and pain out of proportion to the clinical findings.[9] (*Id.* at 22–23.) Even if the Court found

---

[8] The Court rejects Plaintiff's argument that the ALJ erred by failing to show that "a substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations." (Pl. Br. at 17–18 (emphasis removed).) The fact that Plaintiff went camping for *a month* likely constitutes "a substantial part of a typical day." Even if it does not, the ALJ properly discounted Plaintiff's allegations because he engaged in activities which are "inconsistent with the alleged symptoms," *Lingenfelter*, 504 F.3d at 1040, and which "contradict [his] claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113.

[9] Plaintiff argues that the ALJ was not permitted to consider whether medical evidence supported the alleged severity of his impairments. (Pl. Br. at 13–14.) This argument is without merit. The regulations plainly state that the ALJ must "determine the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the *medical signs and laboratory findings* and other evidence to decide how [his] symptoms affect [his] ability to work." 20 C.F.R. § 404.1529(a) (emphasis added). The ALJ, however, may not "reject [the claimant's] statements . . . *solely* because the available objective medical evidence does not substantiate [them]." *Id.* § 404.1529(c)(2) (emphasis added). As discussed, the ALJ gave multiple legally valid reasons for rejecting Plaintiff's allegations. Therefore, the

error in these other reasons, it would not change the outcome of the case because some of the ALJ's reasons *are* valid and supported by substantial evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ's reliance on invalid reasons to reject claimant testimony was "harmless error" where ALJ had also relied on valid reasons).

**B.     The Opinions Of Plaintiff's Treating Physicians Were Properly Rejected.**

Plaintiff's second assignment of error is that the ALJ improperly rejected the opinions of his treating neurologists, Paul Bendheim, M.D., and Josh Tobin, M.D., and primary care provider, Carlos Garreton, M.D.  (Pl. Br. at 20–26; *see* R. at 23–24.)

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence.  20 C.F.R. § 404.1545(a)(3); *see* 20 C.F.R. § 404.1527.  "[P]hysicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability–the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  In general, medical opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight.  *Id.*  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[10]  *Id.*  An ALJ satisfies

---

ALJ did not err in basing the rejection of Plaintiff's allegations, in part, on their lack of corroboration from the clinical evidence. *See Lingenfelter*, 504 F.3d at 1040.  Moreover, Plaintiff argues that the ALJ erred by not "t[ying]-in the characterization of the medical record with any particular symptom testimony."  (Pl. Br. at 14.)  The Court finds no such error.  Given that the ALJ identified Plaintiff's allegations (R. at 20–21) and then discussed the evidence they were inconsistent with (*id.* at 22–23), the Court is able to reasonably discern the ALJ's path and meaningfully determine that the ALJ's conclusions are supported by substantial evidence.  *See Treichler*, 775 F.3d at 1099.

[10]     Although the ultimate issue of whether a claimant is "disabled" or "unable to work" is not a medical opinion but an administrative finding reserved to the Commissioner, 20 C.F.R. § 404.1527(d)(1), an ALJ may only reject a treating physician's controverted opinion on the issue for specific and legitimate reasons supported by substantial evidence.

the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675. The ALJ may reject opinions which are "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), or which are "based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible," *Tommasetti*, 533 F.3d at 1041 (internal citation omitted).

Here, all three physicians opined that Plaintiff would miss 15 or more days of work per month due to headaches, which, per VE testimony, would preclude all work. (R. at 23, 58, 809 [Bendheim: 15-20 days], 1223 [Tobin: 30 days], 1224–25 [Garreton: 90% of workdays].) The ALJ assigned "little weight" to these opinions, finding them "heavily based on [Plaintiff's] subjective complaints" and "inconsistent with [his] activities of daily living" of gardening, hiking, and camping and previous work in demolition and landscaping. (*Id.* at 23.) The ALJ also noted "normal examinations and possible medication overuse" in the treatment notes. (*Id.* (citing *id.* at 1221–22, 1237.) Additionally, Drs. Bendheim and Garreton opined that Plaintiff was "disabled" or "unable to work" because of headaches. (*Id.* at 24, 525, 527, 563, 597–98, 862.) The ALJ likewise assigned "little weight" to these opinions because they regard the ultimate issue of

---

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also* SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored.").

disability which is an administrative finding reserved to the Commissioner and are not medical opinions. (*Id.* at 24.)

The Court finds no error as the ALJ's reasons are specific, legitimate, and supported by substantial evidence. First, the ALJ properly discounted the opinions because of their noted inconsistency with other evidence in the record, namely, Plaintiff's activities and previous work.[11] *See* 20 C.F.R. § 404.1527(c)(4); *Batson*, 359 F.3d at 1195. Second, the ALJ properly discounted them because they were clearly based "to a large extent" on Plaintiff's properly rejected self-reports, given that the physicians had no evidence of the *frequency* of Plaintiff's headaches other than his self-reports. *See Tommasetti*, 533 F.3d at 1041; *see also Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 670 (9th Cir. 2011) (noting that there are "no physical symptoms for migraine headache except that the patient would appear to be in pain"). Thus, it was not improper for the ALJ to infer that the physicians' opinions were primarily–if not entirely–based on Plaintiff's self-reports. Third, the ALJ properly discounted the physicians' opinions that Plaintiff was "disabled" or "unable to work" because they regarded the ultimate issue of disability, an administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). As explained above, the ALJ proffered specific and legitimate reasons for rejecting the physicians' opinions that Plaintiff's headaches resulted in disabling limitations and off-task percentages. The opinions of Drs. Bendheim, Tobin, and Garreton were therefore properly discounted.[12]

---

[11] Plaintiff contends that the ALJ "fail[ed] to account for the episodic nature of [his] headaches." (Pl. Br. at 23.) By his own report, however, he was "essentially headache free" *for a month*, which directly contradicts the physicians' opinions of almost daily disabling headaches. (R. at 525.) His work in demolition likewise contradicts the physicians' opinions of disabling phono- and photophobia. (*Id.* at 809, 1223–1224.)

[12] The Court rejects Plaintiff's argument that the ALJ's noting of "normal examinations and possible medication overuse" were "medical opinions in the guise of evidence evaluation." (Pl. Br. at 23; R. at 23.) The evidence at issue speaks for itself. (*See, e.g.*, R. at 1221 ["Potential for medication overuse headache."].). There was no "opining"

**IT IS THEREFORE ORDERED**, **affirming** the decision of the Commissioner.

**IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 18th day of September, 2020.

Honorable Steven P. Logan
United States District Judge

---

by the ALJ. The Court also rejects Plaintiff's argument that the ALJ's analysis of the medical evidence constituted a "medical opinion." (Pl. Br. at 24–25.) The ALJ is specifically charged to "assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The ALJ must evaluate medical opinion evidence according to applicable regulatory standards. *See* 20 C.F.R. § 404.1527. The fulfillment of these regulatory duties is not tantamount to rendering a medical opinion.